## OGLESBY *et al.*, *vs.* OGLESBY.

1. A testator by the 11th item of his will, gave to his son Thomas, who was a minor, a negro boy named Clark, at $550 00, and other property at stated prices and money, making in the whole $2,384 00, as stated in the item. By another, the 17th item, was provided: "In the event that any of the negroes herein given to any of my minor children should die, or become of little or no value before such minor becomes of lawful age, then, and in that case, it is my desire that such deficiency or loss be made up to such child or children so losing, out of my estate." Clark died before Thomas came of age, and at the time of his death was worth $1,200 00.

*Held*, that the sum to be paid to Thomas in lieu was $550 00, at which he was priced in the will, and not his actual value.

In Equity, in Elbert Superior Court. Decision on demurrer by Judge THOMAS, at March Term, 1860.

This was a bill in equity filed by Thomas Oglesby against Adkins Oglesby and Claiborne Webb, executors of the last will and testament of William Oglesby, deceased, seeking the value of a negro bequeathed to complainant by the 11th item of said will, which was as follows:

" I give to my son, Thomas Oglesby, a negro boy named Clark, at five hundred and fifty dollars; Henry, a boy, at two hundred and fifty dollars, also two hundred acres of land, more or less, lying above, and adjoining the Dorner tract, herein given to my son Adkins, at three dollars per acre—$600 00—and is the balance of the John Hall tract; one horse, saddle and bridle, bed and furniture, and cow and calf, at one hundred and sixty dollars, and also eight hundred and seventy-four dollars in money, when he becomes of lawful age, making in all $2,384 00."

The bill further alleges that in, and by the seventeenth item of said will, testator provided as follows: " In the event that any of the negroes herein given to any of my minor children should die, or become of little or no value before such minor becomes of lawful age, then, and in that case, it is my desire that such deficiency or loss be made up to such child or children so losing out of my estate."

The bill further states that the negro boy, Clark, above given and bequeathed to complainant, died in April, 1855,

Oglesby *et al.*, *vs.* Oglesby.

and was thus entirely lost to him, and that this was before complainant attained the age of twenty-one years. That the boy Clark, at the time of his death, was about sixteen years old, young, active and likely, and worth the sum of $1,200 00. Said will was made 4th August, 1852, and testator placed the valuation on said negroes mentioned in said will, for the purpose of making an equal division amongst his children, and was relatively, and for that purpose, just and proper, although far below their real value. The complainant claims that the defendant's executors aforesaid, ought to pay to him the sum of $1,200 00, the worth or value of said negro, out of the assets of said estate in their hands, instead of five hundred and fifty dollars, which the bill admits they have paid, in and under the seventeenth item of said will, to make up his loss aforesaid.

To this bill defendants demurred for want of equity. The Court overruled the demurrer, and defendants excepted.

HESTER & AKERMAN, for plaintiffs in error.

WASDEN & NELMS, *contra.*

*By the Court*—LYON, J., delivering the opinion.

To understand this case as we have decided it, it is necessary that I should state more of the will than is stated by the Reporter. The 4th item gives to his son Adkins, lands, two male slaves, and perishable property estimated at $3,000 00, all of which had been received by the legatee.

The 5th gives to his five grand-children Elizabeth, a negro woman, and some other property, all estimated at $552 00, which had been received by the parents of these children, Henry and Elizabeth David, during their lifetime, and then to Adkins in trust for them; $1,750 00 in money, making in all $2,310 00, as stated in the will.

The 6th gives to Claiborne Webb, a son-in-law, a negro woman and man, valued at $950 00; some money, (property I suppose), estimated at $202 00 and $951 00; in all $2,113, as stated, all of which had been received by the legatee.

The 7th to William Oglesby, a negro man and boy at

$1,000 00; some household property and land at $1,360 00; in all $2,360 00, and received by him.

8th gives to Wm. Settle, a man and woman at $1,100 00; perishable property and land at $560 00, and $500 00 in money; in all, $2,160 00, and received, except the $500 00 in money.

9th to John Oglesby, land at $1,374 00; a man and boy at $850 00, a horse, bridle and saddle, bed and furniture, at $160 00; making in the whole $2,384 00, none received but horse, etc.

10th gives to Adkins, in trust for Susan, two female slaves and one boy at $850 00; $100 00 in money, or a horse worth that; personal property of the value of $160 00, and $1,374 00 in money; saddle and bridle only received; in all $2,384 00.

11th to Thomas, as stated, $2,384 00.

12th to Abda, two male slaves at $750 00; land and personal property at $1,360 00, and $274 00 in money; in all $2,384 00.

13th to Drewry P., two negro boys at $650 00; personal property and land at $1,360 00, and $474 00 in money; in all, $2,384 00.

14th to Adkins, in trust for Nancy, a negro woman and girl at $500 00; personal property at $160 00, and in money, $1,724 00.

15th directs that the balance of his estate remain on the plantation during the life or widowhood of his wife, until Nancy Ann marries or becomes of age.

18th. It is my will, that when my daughter, Nancy Ann, marries or becomes of lawful age, that the negroes not herein willed away, and left to my wife, be sold, and the legacies herein given to my daughter, Elizabeth's five children, be paid to them in the manner pointed out in the fifth item of this instrument; and also the money legacies, herein given to my minor children, be paid in the manner, and at the time hereinbefore pointed out. It is also my desire, that soon after my death, that the shares of my son, in Claiborne Webb, William M. Settle, and my son William, be made up and paid in money equal to the amount herein given to my son John, which was $2,384 00.

19th. It is further my will, that all the balance of my estate, together with what is herein left to my wife during her

life or widowhood, except the land, at her death or marriage, be divided among all of my own children, and the children of such of them as may be dead, drawing or being entitled to one share only, except the children of my daughter Elizabeth, and the children of my daughter Sarah, wife of Linsey Johnson, who are not to have anything in this division; and except, also, my son Adkins Oglesby, until all the shares of those hereby entitled are made equal to his, then he, together with all my grand-children, except those hereinbefore excepted, are to share and share alike."

The Court below, in passing on the question made by the bill upon this will, held, that the true reading of the 17th item was, that the executors should make good the loss to complainants, occasioned by the death of the negro boy Clark, according to his real value, or what it would have been had he lived up to the time Thomas Oglesby became of age, in 1855, and not according to that price attached to him by testator; in other words, that as Clark had died, the executors should pay the complainant $1,200, his actual value, instead of $550 in place of Clark. Is that the true construction? It is not to be denied but the argument made by Judge Thomas in support of his decision, is a most cogent and plausible one. The most prominent objection to his view of the question is, that he has construed this item without reference to the other great and leading principles and provisions of the will. Take the two items under consideration by themselves, and without reference to the other parts of the will, and the other persons interested, it would appear to be the intention of testator that the actual loss sustained by the legatee in consequence of the death of a negro, should be made up to him, and not the mere nominal sum placed on the negro, and named in that item; but that is not the proper way of construing this will. Each item must be construed with reference to all its parts, so as to get at the true intention of the testator. By reference to the several items of this will, it will be seen that $2,384 is the sum given to all the children who were not excluded, and who had not been previously advanced, whether the property of things given preponderated in land, negroes, or money, and what the things given at the price put on them by testator; whether of the one or the other, lacked of coming up to that sum, was made up to it in money in every case; to some the legacy was mostly in land,

to others, mostly in money, and some one or more negroes were given to each, while none received the same amount in valuation, in money, land or negroes. The only things in which there was equality, was the specific bequest to each of a horse, bridle, saddle, cows, calves, etc., of the value of $160, and the *amount* estimated to each, which was $2,284; from all these items, it is manifest that he intended to make the specific bequests equal, that is, that all should receive the same amount or sum, considered as so much money. So, if the several things or amounts which he had previously advanced to his other children, whether of money, lands or negroes, and there was no other equality in these advances than with the bequests to miners, or those who had received nothing, where they fell short, according to his estimate, and they all did so, except Adkins who was in excess; the amount was required by the latter clause of the 18th item, to be made up and paid in money equal to the amount therein given to Thomas, which was $2,384. Let it be noticed that in this item the deficiency in the advances, or shares of Webb, Settle and William, is the difference in the value the testator places on the property received by them—not its intrinsic or increased value, and the amount; that is the same; not the actual value of the specific things given to John according to his valuation, and that it is to be paid in money. From this we infer that the testator had an object in pricing the property, and that object was to equalize his gifts; that he looked to the sum of the whole as the amount given, and not the specific things. By this arrangement, the testator brings the advances and bequests to all of his children, who participate equally in the distribution, and all do, to that point, except Mrs. Johnson or her children, up to the sum of $2,384, at his estimates, except Adkins, whose advancements amounted to $3,000. At this point there is a deficiency in the shares of all the legatees to that of Adkins of $616; and this deficiency, by the provision of the 19th item in the general division, is to be made up to them; Adkins receiving nothing more until all have been equalized with him at that time, then the balance is to be divided equally. Now, is it not apparent from all this that the object of the testator was, that his children should receive an equal amount of his estate considered and valued at the same time? Not that the specific property shall be alike or equal in value, or that the particular prop-

erty given to a particular child, is any especial manifestation of his regard in favor of such child. The only importance throughout the entire will, which the testator attaches to the property given, is, as the representation of the amount of money at which he estimates it to bring up the shares to the sum advanced or bequeathed to all alike. Wherever there is a deficiency in the amount received, or to be received by the legatee, occurring in his will, that testator can foresee and provide for specially, it is either made up or to be made up in money to a particular cash point. Money with the testator, as with the great bulk of mankind, is the standard by which his affection for his children are measured and displayed. It is with him as it is everywhere and by everybody, the great leveller and equalizer in the account to be taken of men and things, and in the estimate to be put upon property, is the only safe and reliable one. It comes nearer to a fixed and unchanged value than anything else. It is not subject to destruction and fluctuation like other property.

With this view of the will, considered as a whole, let us look at the particular items, the 17th considered with reference to the complainant, and the death of the boy Clark. The words of the item are, " In the event that any of the negroes herein given to any of my minor children, should die or become of little or no value before such minor becomes of lawful age, then and in that case, it is my desire that such deficiency or loss be made up to such child or children so losing out of my estate." Mark the words : " such deficiency be made up." See the similarity in this provision and that in the 19th item, and the fact existing in every item in the will where the specific property falls short of the $2,384 00. But what is the deficiency, and how is it to be made up ? We have seen that testator, without reference to the things given, except as the representative of so much money, equalizes the children at $2,384 00 ; and that is the exact amount which is specially named to Thomas in the 11th item. Clark has died ; the testator foresaw that. Now take him out of the item and you have the deficiency which is to be made up to him, and as in every other case, with money, just as the testator would have done if he had not had Clark to put in in the first place. If Clark be taken out, and the price at which he was estimated, complainant will have received $1,834 00 ; the difference between that and $2,384 00, the sum intended

to be given him, is the deficiency and the amount to be made up, so as to bring his sum again to the same point, $2,384 00. This view of the question is conclusive to our minds. Any other would break up the equilibrium or scale of equilization that the testator has, with so much pains and care, set up and maintained throughout the entire will. For instance, give to Thomas $1,200 00 for the loss of Clark, instead of the $550 00, and the amount he will receive from the estate will be $3,034 00, while that of the balance will be respectively $2,384 00, and that disparity will continue to the end. The testator never intended this, but that the amount received by his children from his estate should be equal, and that this equality should remain unbroken, although a negro intended for one of the younger children should die before coming to the possession of the child. According to any other rule the misfortune caused by the death of a negro, would fall on the other children, and not on the one to whom bequeathed.

For these reason, we think, the Court below ought to have sustained the demurrer and dismissed the bill; the amount of $550 00 paid by the executors being all that complainant was entitled to under this will, on account of the loss occasioned by the death of the negro boy Clark. Besides, this view accords with the law of advancements upon which testator evidently acted in making these testamentary dispositions, that each child should receive the same amount of property in money, having reference only to the actual value of the thing advanced at the time advanced; unaffected by the diminished or increased value of the thing given. Again, it is in perfect consonance with the law of contracts between individuals. If one sells or conveys to another a thing, with the undertaking to make it good in case of loss or destruction, the price named, or at which it was estimated, is the sum to be paid back, without reference to its advanced or diminished value. The law does not regard the fluctuating value of the thing in controversy, but adopts that which the parties have set on it; and so in this will, in making good to the complainant the loss sustained by the death of Clark, the law adopts that sum which the testator placed upon him. It is the only certain and uniform rule by which the Court can be governed.

Judgment reversed.